UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEFFREY SINGSTOCK,

        Plaintiff,

v.                                                                          Case No. 16-C-210

GLOBE LIFE AND ACCIDENT
INSURANCE COMPANY,

        Defendant.

## DECISION AND ORDER

This is an action to recover the accidental death benefit under a policy of insurance. Plaintiff Jeffrey Singstock, the named beneficiary under the policy, has sued Defendant Globe Life and Accident Insurance Company (Globe Life), the company that issued the policy. The parties are citizens of different states, and the amount in controversy exceeds $75,000. This court therefore has jurisdiction under 28 U.S.C. § 1332. The case is before the court on cross motions for summary judgment. Because there exists a genuine dispute as to the material facts, both motions will be denied.

**I. BACKGROUND**

Steven Singstock was insured under a policy issued by Defendant Globe Life and Accident Insurance Company effective May 15, 2013. The pertinent terms of the policy read as follows:

**ACCIDENTAL DEATH BENEFIT**

Upon receipt of due proof of the Accidental Death of the insured while coverage on such insured is in force, We will pay the Accidental Death Benefit shown in the Certificate Schedule.

**DEFINITIONS**

ACCIDENT: A fortuitous event, unforeseen and unintended.

ACCIDENTAL BODILY INJURY: Unexpected traumatic damage to the Insured's body, of external origin.

ACCIDENTAL DEATH: Death due to Accidental Bodily Injury caused by an Accident occurring while the insurance is in force; the death must occur within 90 days after the date of the Accident, directly and independently of all other causes.

**EXCLUSIONS**

This certificate does not cover death caused by: . . .

3.   Being under the influence of any drug, narcotic, poison or gas unless taken on the advice of a physician.

ECF No. 18-1 at 3–4. The death benefit payable under the policy is $200,000, and the named beneficiary is Jeffrey Singstock, the brother of the insured.

Steven Singstock died on April 26, 2014, when the motorcycle he was riding left the roadway and struck a large tree located in a ditch. There were no witnesses. A passerby came upon the scene shortly after the crash occurred and notified the Winnebago County Sheriff.

The investigation conducted by the Winnebago County Sheriff's Department determined that the crash occurred at approximately 5:19 p.m. as Steven was proceeding eastbound on 9th Street in the Town of Omro about a tenth of a mile west of County Highway F. At that location, 9th Street is a straight, level two-lane road with a posted speed limit of 55 miles per hour. At the time of the crash, it was daylight, the weather was clear and the pavement was dry. Tire marks, believed to be from the motorcycle, indicate that the motorcycle veered right off the roadway and ran almost head-on into the tree in the south ditch. Steven was not wearing a helmet and died at the scene. His right

shoe was later found in the north ditch to the west of the crash. Aff. of Jeffrey A. Evans, Ex. 8, Wis. Motor Vehicle Accident Report, ECF No. 18-8.

On April 28, 2014, Dr. Kristina Giese, an associate medical examiner for Fond du Lac County, performed an autopsy on Steven. *Id.*, Ex. 3 at 6, Autopsy Protocol, ECF No. 18-3 at 6. Dr. Giese found that Steven's death was caused by multiple blunt force trauma to his head, neck, chest, and extremities. *Id.*; Def.'s Proposed Findings of Fact (DPFOF) ¶ 18, ECF No. 17. The examination also included a toxicology analysis of Steven's blood, urine, and vitreous fluids to determine whether he was impaired or intoxicated at the time of the crash. According to the toxicology report, Steven's blood contained alprazolam in a concentration of 8.7 nanograms per milliliter (ng/mL) and identified the therapeutic range of alprazolam to be between 10 and 40 ng/mL. DPFOF ¶ 20. Steven's urine sample revealed alprazolam in a concentration of 100 ng/mL and a related metabolite concentration of 378 ng/mL. Steven's blood test revealed the presence of diphenhydramine, or Benadryl, in a concentration of 218 ng/mL, well within the therapeutic range of between 30 and 300 ng/mL. The report also noted that the femoral blood sample was unsuitable to test for a concentration of hydrocodone and alcohol. However, Steven's urine sample tested positive for both substances, showing hydrocodone in a concentration of 149 ng/mL and a related metabolite concentration of 77 ng/mL. The urine sample further revealed Steven had an alcohol concentration of 0.054% weight by volume. The vitreous eye fluid test was negative for alcohol. *Id.* Steven had prescriptions for alprazolam and hydrocodone at the time of his death from Dr. Michael Duffy, his doctor. According to Dr. Duffy, who specializes in internal medicine, Steven had some problems with anxiety and depression in the past, but had never expressed any suicidal intent. Evans Aff., Ex. 11, Dep. of Dr. Duffy, at 12:10–14, ECF No. 18-11 at 3.

On May 20, 2014, Jeffrey Singstock submitted a claim for the benefit due under the policy to Globe Life. Globe Life denied the claim by letter dated August 22, 2014. Globe Life contends that Jeffrey is not entitled to the death benefit payable under the policy because Steven's death was not accidental as required by the policy. Alternatively, Globe Life argues that coverage is excluded because Steven's death was caused by his being under the influence of the various drugs found within his system. Both parties now claim they are entitled to summary judgment in their favor.

## II. ANALYSIS

### A. Rules Governing Summary Judgment

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

### B. Applicable Substantive Law

As a threshold matter, the court must decide what state's law govern's the dispute. The parties assume that Wisconsin law applies, and so the court will do so as well. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002) (holding that absent discussion of choice of law issues, federal court sitting in diversity should apply law of forum state); *see also Fednav Intern. Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 383 (7th Cir. 2010) ("In a case such as this one, in which federal court jurisdiction is premised on diversity of citizenship, state law applies to substantive issues." (citing *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008))).

In Wisconsin, courts follow general principles of contract construction to interpret insurance policies. *Marotz v. Hallman*, 2007 WI 89, ¶ 34, 302 Wis. 2d 428, 734 N.W.3d 411. The court must construe the policy to give effect to the intent of the parties. *State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶ 13, 275 Wis. 2d 35, 46, 683 N.W.2d 75 (citation omitted). The policy's clear terms must not be rewritten "to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium." *Am. Family Mut. Ins. Co. v. Am. Girl., Inc.*, 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65. If a policy is ambiguous, however, its terms are construed in favor of coverage and against the insurer. *State Farm Mut. Auto. Ins.*, 275 Wis. 2d 35, ¶ 15 (citing *Folkman v. Quamme*, 2003 WI 116, ¶ 16, 264 Wis. 2d 617, 665 N.W.2d 857). Policy language is ambiguous "if it is susceptible to more than one reasonable interpretation." *Folkman*, 264 Wis. 2d 617, ¶ 13.

It is also well established under Wisconsin law "that a claim for benefits under an insurance policy gives rise to a shifting burden of proof." *Kozlik v. Gulf Ins. Co.*, 2003 WI App 251, ¶ 8, 268 Wis. 2d 491, 673 N.W.2d 343. First, the claimant must prove that his loss "falls within the policy's

5

broad grant of coverage." *Id.* (citing *Glassner v. Detroit Fire & Marine Ins. Co.*, 23 Wis. 2d 532, 536, 127 N.W.2d 761 (1964)). If the claimant meets this initial burden, the burden then shifts to the insurer to prove that an exclusion removes the coverage otherwise provided for the loss. *Id.*

Finally, for purposes of deciding this case, it is important to note that Wisconsin follows the majority rule that where death results from external and violent means, it is presumed to be accidental absent evidence to the contrary. *Tully v. Prudential Ins. Co. of Am.*, 234 Wis. 549, 291 N.W. 804 (1940); *see generally*, C. T. Drechsler, Annotation, *Proof of Death or Injury from External and Violent Means as Supporting Presumption or Inference of Death by Accidental Means within Policy of Insurance*, 12 A.L.R.2d 1264 (originally published in 1950) [hereinafter "Drechsler"]. This presumption rests upon the natural human inclination to avoid injury and preserve one's life. *Id.* at § 3. "[I]n a case of this character, where no more is shown than the fact of the insured's violent death without the benefit of any of the explanatory circumstances, then such fact, considered in the light of the presumption of love of life which obtains in the case of the normal individual, is so repugnant to the idea of death by intention or invitation as to afford the presumption that death was by accident or accidental means, and thereby satisfy the plaintiff's initial burden of proof upon such issue." *Sellars v. John Hancock Mut. Life Ins. Co.*, 149 S.W.2d 404, 405 (Mo. 1941).

In *Tully* the insured was found on the floor of his garage dead as the result of a shotgun blast to his chest. No one else was present. The shotgun, which the deceased had borrowed from a friend so he could go hunting with his parish priest, was found on the front seat pointing toward the open car door near where the deceased was found. After listening to the evidence, a jury returned a verdict finding that the deceased did not commit suicide, and the Wisconsin Supreme Court affirmed

6

the judgment entered on the verdict. 291 N.W. at 805. In so ruling, the court noted that there were some circumstances that pointed to suicide. The gun had been disassembled when taken from the house, meaning that the deceased must have assembled it after he left and inserted a cartridge in the chamber, which could not have been done accidentally. Since the hunting trip had been cancelled, there appeared to have been no reason to assemble the gun. *Id.* at 806. On the other hand, the court also noted there were circumstances that suggested otherwise. The decedent had never at any time disclosed in any way a suicidal tendency. He was prosperous, happy in his home, and while he was suffering from ill-health, there was nothing immediately alarming about that or anything that should have given him great concern. *Id.* Because the evidence was such as to give rise both to an inference that the death was a suicide and that it was accidental, the court concluded that the verdict must stand:

> The plaintiff having established the fact that the insured died from a gun shot wound, the law presumes that the wound was inflicted accidentally, which presumption will prevail in the absence of evidence sufficient to establish suicide to a reasonable certainty. If the insurer is to escape liability the burden is upon it to produce the evidence which establishes suicide. The burden is not upon the plaintiff to establish to a reasonable certainty that the insured did not commit suicide. The presumption of law aids the plaintiff in that regard and while the presumption is rebuttable, it is only rebutted by the production of evidence which establishes the fact of suicide to a reasonable certainty.

*Id.* The presumption has been held to apply in cases involving death caused by motor vehicle crashes as well. Drechsler at § 9; *see also New York Life Ins. Co. v. Ross*, 30 F.2d 80 (6th Cir. 1928) (affirming jury verdict finding insured's death resulting from his automobile leaving road and going over steep bank of canal accidental).

7

### C. Accidental Death or Suicide

In light of the foregoing, and considering the evidence before the court, I conclude that the question of whether Steven's death was accidental or a suicide cannot be determined on summary judgment. The question presented is one of Steven's intent. We cannot look into a person's mind is order to determine his intent. Generally, a person's intent must be inferred from his or her words or actions. *United States v. Williams*, 553 U.S. 285, 306 (2008). One's words and actions, however, are often susceptible to more than one inference. For this reason, courts approach the application of summary judgment principles with "special caution" when the issue is one of intent. *Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir. 1989).

In this case, for example, there are facts from which a jury could infer that Steven committed suicide. Given that one usually intends the consequences of his actions, the fact that Steven appears to have driven his motorcycle off of a straight road in broad daylight on a clear day and directly into a large tree could support the inference that he intended to take his own life. On the other hand, because no one witnessed the crash, we don't really know if he may have veered off the road for some other reason, such as to avoid another car or an animal that suddenly appeared in his pathway. Several deputies reported seeing deer tracks along the roadway. Evans Aff., Ex. 4, Dep. of Deputy Schoonover at 10:25–11:15; Ex. 5, Dep. of Deputy Schwerke at 6:23–7:15; and Ex. 6, Dep. of Deputy Pederson at 5:25–6:09. From these facts and the absence of evidence of any motive for taking his own life or prior indication of an intent to do so, a jury might infer that his death was an accident. We are left with facts that give rise to competing inferences, and it is for the jury, not a court on summary judgment, to choose among competing inferences. *Abdullahi*, 423 F.3d at 773. I therefore conclude that on this issue, summary judgment must be denied as to both parties.

### D. "Under The Influence" Exclusion

Globe Life alternatively argues that even if Jeffrey can show that the crash was an accident, coverage would nevertheless be eliminated by the "under the influence" exclusion. The exclusion, to repeat, provides that the policy "does not cover death caused by . . . [b]eing under the influence of any drug, narcotic, poison or gas unless taken on the advice of a physician." ECF No. 18-1 at 4. Globe Life contends that Steven was impaired by the combination of medication and alcohol in his system and that his impairment caused the accident. Thus, Globe Life contends, Steven's death was caused by his being under the influence of drugs.

Here too, however, factual disputes preclude summary judgment in Globe Life's favor. Although the toxicology report showed that Steven had some level of alprazolam (Xanax) and diphenhydramine (Benadryl) in his blood, as well as hydrocodone (Vicodin) and alcohol in his urine, Globe Life's own expert could only say that it may have impaired his ability to drive. Dr. Alan Bloom, a professor of pharmacology and toxicology at the Medical College of Wisconsin, opined that the additive effect of all of the drugs found in Steven's system would have caused some impairment of his ability to safely operate a motorcycle. In Dr. Bloom's opinion, Steven's impairment contributed to the motorcycle crash. DPFOF ¶¶ 51–54. He was unable to say to what degree it contributed, however. Evans Aff., Ex. 9, ECF No. 83-9, Dep. of Dr. Bloom at 100:07–102:13. This is not enough to establish as a matter of law that the "under the influence" exclusion applies.

In *Smith v. Stonebridge Life Insurance Company*, the court found a similar exclusion to be ambiguous. 473 F. Supp. 2d 903 (W.D. Wis. 2007). There the policy excluded coverage for injury that "is caused by or results from the Covered Person's blood alcohol level being .10 percent by

9

weight of volume or higher." *Id.* at 907. The insured and his passenger were killed when the truck he was driving went off the road, flipped and hit a tree. An autopsy disclosed that the insured's blood alcohol level at the time of the accident was .164g/100ml, more than twice the legal limit, which the court found was no doubt a factor in producing the accident. *Id.* at 905, 910. The court noted, however, that the weather and the conditions of the road might also have been a factor. Rain had turned to snow on the night of the accident, and the roads had been reported snow-covered and slippery. Seventeen other vehicles landed in ditches in the same county that night. *Id.* at 905–06. In construing the insurance policy before it, the court found the word "cause" in the exclusion ambiguous since it could be understood as meaning one cause among many, a substantial factor, or the sole cause. Following Wisconsin law, the court adopted the narrowest of the possible constructions and chose "sole cause" as the meaning of the word "cause" in the exclusion. *Id.* at 909–10 (citing *Garriguenc v. Love*, 67 Wis. 2d 130, 134–35, 226 N.W.2d 414 (1975)). Under this interpretation of the policy, the court held the claimants were entitled to summary judgment. Given the weather conditions and the absence of any witnesses to the accident, the court concluded that it would be impossible for the defendant insurer to prove that the insured's alcohol level was the sole cause of the accident. *Id.* at 910.

In this case, of course, the weather and road conditions could not have been a factor in the crash. The weather was clear, and the road was dry, straight and flat. On the other hand, unlike in *Smith*, we do not know the level of impairment of the insured. In light of the absence of any other explanation, a jury might infer that Steven was impaired to a degree that caused the accident. But the evidence is not so strong that a jury would be required to draw such an inference. Ultimately, it is the insurer's burden to prove by a preponderance of the evidence that the exclusion applies. The

10

record is not sufficient to support summary judgment one way or the other.  Again, when there are competing inferences, it is for a jury to decide.

## CONCLUSION

Accordingly, for the reasons set forth above, Globe Life's motion for summary judgment (ECF No. 15) is **DENIED** and Jeffrey's counter motion for summary judgment (ECF No. 21) is likewise **DENIED**.  The Clerk is directed to set this matter for final pretrial and trial.

**SO ORDERED** at Green Bay, Wisconsin this   14th   day of November, 2017.

>s/ William C. Griesbach
>William C. Griesbach, Chief Judge
>United States District Court